This case presents the issue that was left open in Harris v. Carter. Is a habeas petitioner entitled to equitable tolling of the Federal statute of limitations when the statute was ambiguous as to the relevant points, but he did not rely on any The two courts that have addressed this issue, the Sixth and Tenth Circuits, have both ruled in the petitioner's favor. I'm asking this Court to join them. Well, let me ask you this, though. On that, he still has to prove a diligence prong, correct? That's correct. He does have to pursue his remedies diligently. And so if you lose on the diligence prong, then that's a problem for him, even though it may have been ambiguous, correct? I agree. As, for example, in Pace v. DiGuglielmo, where the prisoner waited five years doing absolutely nothing before presenting his claims in any court. Well, give me your best argument on the diligence prong, then, from that, because you've got, what, 340 days that you have to be equitably told, correct? I haven't counted them up, but that sounds about right. Plus or minus. I mean, I think it's 340 days late. So give me your best diligence argument so that I can, assuming that I accept the ambiguity argument, that I can satisfy that prong. Very well, Your Honor. Unlike the petitioner in Pace, for example, Mr. Waldron Ramsey had essentially nonstop litigation going in State court. He diligently pursued his direct appeal, in fact, filed a Federal suit to speed it up at one point. He lost on perhaps his best claim, the self-representation claim, because the clerk kept insisting that they couldn't find the tape of a critical pretrial hearing. Finally, he manages to obtain that tape. And, in fact, it does support his claim. So he prepares a personal restraint petition and goes back into State court. To be sure, it took him a There were some delays in there. Could I ask you to put aside for a minute his delays up to the point where the claims were exhausted? But once he lost in the State court, what reasons would justify his not filing his Federal petition then? In other words, why did he move to reopen a previously dismissed petition that had been dismissed for lack of exhaustion, rather than just filing his habeas petition within the deadline? Well, Your Honor, it may seem easy to the Court to figure out how to file a habeas petition. It certainly wasn't an easy matter for Mr. Waldron Ramsey. He had a very complex record and a lot of claims. And he was having a lot of trouble getting access to his legal materials. And he wasn't a lawyer. He knew it was going to take him a while to get it together. He thought perhaps that might work, although it was clearly an improper approach, trying to reopen that other habeas case, which had nothing to do with the merits of his claims. But I'd note that in denying that request, the judge, Judge McDonald, told him that the April 1997 deadline was not absolute. The judge told him, in denying his request to reopen, that he could – there would be – there would be tolling while the State post-conviction petition was pending, and also told him that there could be equitable tolling. So he had every reason to believe that his State court petition had told the Federal deadline, and that he would – would, therefore, would be timely on the date that he did file the petition. I think I might have interrupted you before you'd completed your answer to Judge Callahan's question. So why don't you go ahead and make sure you've addressed what she asked you. Hmm. I think I have. Perhaps I did. We were discussing diligence. And once he got that tape, he did pursue his claims in the personal restraint petition. Did he ever receive any advice on termination dates, according to the record, when he had to do something? Now, are you saying dates as far as when the Federal – Did he ever get legal advice from anybody as to when he was supposed to act? Oh, I don't think there's any indication of that. I mean, he was on his own. The AEDPA had just been passed – just came out during this time. Prisoners were on their own learning about it. But we do know that at least at some point he was informed that he could be – he would be entitled to tolling while his State court petition was pending. You don't get tolling forever. Tolling has some limits to it. He was not aware of any limit. Oh, no. The limit is that it would be that his Federal deadline would be tolled while the State court petition was pending. And if, in fact – and he believed that he had properly filed a State court – I believe he properly filed a State court petition. When the State court petition was resolved, we still have another long period of time that he's claiming tolling. Yes, but the Federal – if there had been tolling, the Federal deadline had not even begun to run at the time his State court petition was filed, because AEDPA hadn't even gone into effect yet. That's true. So he had the whole – When it was resolved, it started. That's right. And he filed within a year of the time that the State court petition was resolved. Which, by the way, I think if you – if you hired an attorney these days and the attorney felt very confident that he had a year to file a Federal habeas petition, the attorney might very well wait until somewhere, you know, have other things to do, have research. If you got a meritorious petition, get it filed tomorrow and get him out of the slammer. You also want to do it right. I know. And this case sure illustrates how many trap doors and mazes there are with State and Federal post-conviction litigation. For a lawyer who specializes in the field, as I do, it is a full-time job keeping up on every court rule, statute, court decision in State and Federal courts. And the reason I'm saying that is because here you have a prisoner desperately trying to learn all this stuff. And we see what happens if you just throw something into court. It's treated as another civil case. I'm sorry? It's treated as just another civil case. You don't get appointed counsel unless you've got an interesting case and some judge says let's get it decided. Right. He had no right to counsel. He was without his legal materials for much of the time. He's trying to get it all figured out. He's seen what happens when you just sort of throw your claims together and put them in court. The courts, you do something wrong. He's trying to learn how to do it right. And the one thing he thought he had gotten the hang of at this point is the Federal time was not running while his State court petition was pending. So he should have a year. Well, now, okay, the State petition, he knew the outcome of that on September 17th of 1996, seven months prior to the EDPA deadline, which was April 23rd, 1997. And then I guess the certificate of finality was issued a full two weeks prior to that date. Then he doesn't, for a whole year, and six months after the district court denied his motion to reopen, he doesn't file anything. I'm sorry, Your Honor. The State court petition was not finally denied until April 9, 1997. Okay. That was the certificate of finality. Certificate of finality, which seven days after the motion to modify was. Okay. And the EDPA deadline was April 23rd, 1997, correct? I had April 24, but I'll take your word for it. Okay. All right. So it's 339 days, not 340 or whatever. But then he doesn't file anything for a whole year, right? Well, for a little less than a year, which he was entitled to do as long as his State court petition were properly filed. Because he had told the Federal any running of the Federal deadline while the State court was going. The Federal clock had not even begun to run until that State court petition was finally denied. Or at least he certainly had good reason to think that was the case. I still can't imagine why it wasn't a properly filed State court petition. It was based on newly discovered evidence. And this Attorney General's office, in a case currently pending before you, the Kozol case, is saying that, of course, you're entitled to rely on the unnewly discovered evidence to make a State court petition timely in Washington. And they're blaming Kozol for not doing so. Okay. Well, your time is up, but I have a question still. So we'll extend your time a little. Thank you, Your Honor. One of the things that we spend a lot of time talking about, a lot of time talking about diligence, but also the other prong is that for equitable tolling, the matter must be some extraordinary circumstance beyond his control. So what – why is it that we could consider his misinterpretation of the law to be a circumstance beyond his control? Well, I think this Court should consider the failure of Congress to clarify some important term in a deadline as being an extraordinary circumstance that is not within the prisoner's control. He had no way of clarifying that point. He wouldn't know that the – how the Ninth Circuit would ultimately rule or how the U.S. Supreme Court would rule. Certainly, his interpretation was reasonable. I would also say in this case, it is extraordinary that if in fact – I still don't think the State courts did find his petition untimely, but I know this Court did. I still find it extraordinary that they could have done so when the exception for newly discovered evidence clearly applies to what he did. No one has ever explained to him why the exception for newly discovered evidence could not apply to his case. All right. We're over your time. We'll give you one minute for rebuttal in addition. Thank you, Your Honor. Now we'll hear from the State, please. Good morning, and may it please the Court, Counsel. I'm Paul Weiser, and I'm an Assistant Attorney General appearing today on behalf of Dan Paciolke. It's now law of the case in Mr. Walden Ramsey's case that the State petition that he filed with the Washington Appellate Courts was statutorily time-barred, and that he is statutorily time-barred under the federal statute of limitations, and that he's not entitled to statutory tolling for that untimely personal restraint petition. He's not entitled to equitable tolling because he was aware in 1997 and at times before that the AEDPA clock was running on him, as evidenced by the motion to reopen that he filed in 1997. And he's aware that the personal restraint petition that he had filed had been dismissed as untimely. So what is the evidence in the record that you're referring to that says he was aware of the AEDPA, the April 23 deadline? Your Honor, in the motion to reopen itself, he refers to it as being an April 23, 1997 deadline for filing of his habeas petition. So I think that's a pretty clear indication that he knew that the clock was running, that there was a clock, first of all, and that the clock was, in fact, running. Equitable tolling, according to this Court's cases and the Supreme Court's cases, is available only in rare instances involving diligent litigators who are working under extraordinary circumstances to timely file. Mr. Walden Ramsey's untimeliness was the result of his own litigation choices. He was neither diligent nor were the circumstances he was facing particularly extraordinary. This Court remanded to the District Court specifically to determine the equitable tolling issue after having decided that Mr. Walden Ramsey was not entitled to statutory tolling of the AEDPA time limit. And despite being given that opportunity, Mr. Walden Ramsey didn't come forward with anything to demonstrate that he acted diligently in state court and in federal court and that he failed to demonstrate that there were any extraordinary circumstances. He's never satisfactorily explained at any time why it is he didn't file a 2254 petition sometime before April 24, 1997, whether it was at the time that the Washington Supreme Court denied his motion for discretionary review in September of 1996 or in January 1997 after he filed his motion to modify the Commissioner's ruling with the Washington Supreme Court, or after that was denied. Why didn't he simply file a petition at that time? Is there no question that if he could have filed a new habeas petition, it wouldn't be under the second or successive provisions? No, Your Honor. It is true that Mr. Walden Ramsey had filed some prior petitions, but they were all dismissed without prejudice for failure to exhaust. I believe that's the case. I think there were three of them, and I believe that this was his fourth petition, the petition that's before this Court. So he knew how to do it. He knew how to file a petition, and I think the Court can take notice of what the form petitions look like for inmates, the one that Mr. Walden Ramsey, in fact, used in this case. There's nothing, there are no mazes or trap doors in that form. It informs the petitioner clearly what it is that they have to do in order to get their claims before the federal court, and it's a form that virtually all petitioners rely upon, and Mr. Walden Ramsey has just never simply explained what it is about that form. The substance issue might be dispositive, but assuming we think he was, that we conclude to the contrary, that he was reasonably diligent, under, I think, the Pace case, he would also have to show extraordinary circumstances beyond his control. And so I'd like you on that issue to give me what the State's argument is and include in that how you view the extra-circuit authority that has been urged by Mr. Zuckerman. Yes, Your Honor. First of all, we don't believe that there were any extraordinary circumstances present in this case, and I know that Mr. Walden Ramsey has cited the ambiguity of the statute and that his reasonable belief that the statutory time period was, in fact, totaling. We believe that that's such an incredibly open-ended standard and a subjective one that it cannot be the basis for equitable tolling, simply that a petitioner made a miscalculation of the deadline and when it would run out in his case. Too bad they couldn't make this a little less confusing, though. I'm sorry, Your Honor. It's too bad they couldn't make these deadlines a little less confusing. Your Honor, that may be too bad. I don't know if that's an extraordinary circumstance that Congress didn't write the most crystal-clear statute that they could have and in Justice Breyer's words, in a world of silk purses and sow's ears, that is far from being a model of clarity. Nevertheless, thousands and thousands of habeas petitioners have, in fact, figured it out and filed timely petitions. It's in their best interest and they have an incentive to file early and not to wait and not to just rely on possibly I'll be getting tolling for this factor or that factor. I don't know, but I'm going to just do that anyway because that's the way I litigate cases. And that's really been Mr. Walden Ramsey's approach to the litigation of his case, is just to take as leisurely a pace as possible and blame any delays on others' interference, whether it's there or not. Now, with respect to the alleged seizure of the legal materials by the prison officials back in 1994-95, I think Magistrate Judge Arnold's report and recommendation, which is at the supplemental excerpt of record, page 100, explains really what was going on there. Mr. Walden Ramsey insisted on having 13 boxes of legal materials in his two-man prison cell at all times and refused to cooperate with them in culling out from those 13 boxes the three that were most important to him. Ultimately, we know that that's what happened, that 10 of those boxes were shipped off-site. Mr. Walden Ramsey is now blaming that and saying that that is what hamstrung his ability to file anything decent in state court or in federal court, the fact that the prison officials had seized these materials from him. We don't know exactly what it is that were in those three boxes. Those are confidential legal materials, perhaps some of them attorney-client privileged, and he's never identified what it is that he had, what it is he didn't have, and specifically why the lack of those materials prevented him from filing a timely habeas petition. As the district court noted, and this is at excerpt of record 105, Mr. Walden Ramsey made only generalized allegations. He never identified what was in the three boxes he kept, what was in the other 10, and how the lack of access impeded him from asserting a specific claim. He had the ability to ask his attorney to forward materials on an exchange basis so long as he had the minimum number, maximum number of boxes in chambers, right? That's correct, Your Honor. He was allowed to have three boxes of material, which I believe was itself a departure from department. Like a lending library. Correct. Okay. And he was allowed to have that in his cell at all times. He just wasn't allowed to have 13 boxes all at one time. Now, the claim that he was reasonably confused about how the AEDPA statute, how the time bar ran, I don't think that we can say that he reasonably relied upon that, because we know that he knew that the AEDPA time clock was running. He insists, though, that he said that he thought he needed to file some kind of a thorough brief along with his petition, and that's really what took all the time. Well, that's, again, a subjective version of what Mr. Walden Ramsey thinks is required, at least what he claims he thought was required in order to file a petition. Again, the form petition doesn't say that. It doesn't say you can put a bare-bones set of facts in this petition, but you must accompany this with a thorough legal brief containing citations to cases and to the record. Nothing of the sort. That isn't required under statute. It isn't required under the case law. It isn't required under the habeas rules. It's just not that difficult to fill out a habeas petition. And after the motion to reopen was denied, and Mr. Walden Ramsey is well beyond the statutory time limit for filing a habeas petition, we're talking about September of 1997 now, he gets an order from Judge McDonald explaining to him, no, you can't simply reopen one of your old, now-dismissed cases. You have to file a new habeas petition. And, oh, by the way, there is such a thing as tolling of the statute of limitations, and it can also be equitably tolled under certain circumstances. Judge McDonald didn't tell Mr. Walden Ramsey, you are entitled to tolling, either equitably or statutorily. He said no such thing, made no false assurances to Mr. Walden Ramsey about whether the time was actually tolling in his case. And if Mr. Walden Ramsey had filed right on the heels of Judge McDonald issuing that order, I'm not saying that he would be less time-barred, but he would certainly have a better case to argue for equitable tolling, that he was being diligent and that he was acting promptly as soon as he was made aware of the fact that he was in a no-man's land and that he was not entitled to any tolling at that point. I think it's clear that Harris v. Carter doesn't apply. Mr. Walden Ramsey was not relying upon any then-binding circuit precedent under which he was lulled into a sense of entitlement to tolling. So the factors that were animating Harris v. Carter are simply not present here. Your time is up, but we're giving an extra minute to your opponent. If you need another 30 seconds or a minute, go ahead and take it, but bring it to a close. Thank you, Your Honor. I have, unless the Court has further questions. I just have one question, and this would be if we got beyond this. So this is on my time. But he was denied a COA on his Ferretta issue, but he's asking that to be considered here. What's the procedural history on how that Ferretta issue was handled? It was, Your Honor, I believe it was handled on the merits in Mr. Walden Ramsey's direct appeal, the one that was consolidated with his first personal restraint petition, and that decision would have been the one that was issued in 1994, and that appears in the excerpt of the record. In the state court? Yes, Your Honor. And then what he's asking to consider here, was there anything developed outside the record of that, or was it still the exact same claim? It's my understanding, Your Honor, that it's the exact same claim that was adjudicated by the state court, and previously it was adjudicated by Judge Whaley. Before it came to the Ninth Circuit and then went back. Correct, Your Honor.  Okay. Thank you. I'd ask that the court affirm the district court's judgment of dismissal. Thank you. And Judge Callahan and Judge Pizer get as much time as they want, so. Mr. Zuckerman, we're giving you a bonus minute here to give us thoughts on the problem. Thank you, Your Honor. Mr. Weiser has suggested that the form, the habeas form, is simple and thousands of petitions get filed. Well, the truth is, in 90 percent of those cases, his office comes into the federal court and gets those petitions dismissed without the court ever considering the merits of them. There's always something wrong with them, according to his office and the district courts. They haven't properly stated their federal claims. They haven't shown that there was clearly established U.S. Supreme Court authority. They haven't shown that the state court's decision was unreasonable or contrary to law. They haven't properly exhausted the claims in state court because they presented them to the lower court but not to the state supreme court. There's some procedural default. This is not an easy matter to get right. It's not that you just look at the form and throw something into federal court and then magically your claims get considered. And we have prisoners here sitting in prison, facing life. Mr. Waldron Ramsey may well be innocent, and just because he can't guess how the courts are going to interpret all these rules, he's never going to have his claims heard. Counsel, that's a stretch. First of all, you say the truth of the matter is, in other words, the Attorney General is lying to us and the Attorney General tells us that a sample form is submitted to all the prisoners to assist them in filing a habeas petition. Then you're saying that no prisoner has the sense to fill out the form correctly so that trial courts here, there and elsewhere always find a hole in it and send them back. Is that what your argument really is? I'm saying that the form does not begin to give prisoners the information they need to survive a motion to dismiss their habeas claim. If a form is filled out correctly, was the Attorney General correct in telling us that it would suffice for an adequate petition? It might conceivably. Okay. You said the Attorney General lied. That's what's working. I'm sorry. I just don't think it's a fair argument. That's all. I apologize if it suggested that. There is a form. What I think is very unfair for him to suggest is that by simply following the directions on that form, you're likely to file a sufficient Federal claim such that it will survive a motion to dismiss. And I apologize if what I said came off otherwise, Your Honor. Okay. Well, this appeal is about whether Mr. Waldo Kauffman Ramsey gets equitable tolling. And it's much more about that than about the lawyers. Thanks. Very good, Your Honor. Thank you very much. Okay. The.
judges: Beezer, Gould, Callahan